TELEPHONE AND DATA SYSTEMS, INC., an Iowa Corporation, et al., Appellants,

v.

AMERICAN CELLULAR NETWORK CORPORATION, a New Jersey Corporation, et al., Appellees.

No. 91–7020.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 9, 1991.

Decided June 12, 1992.

---

Alan N. Salpeter, Chicago, Ill., of the bar of the Supreme Court of the State of Illinois, by special leave of the Court, pro hac vice, with whom John B. Williams and Evan M. Tager, Washington, D.C., were on the brief, for appellants.

Allan S. Hoffman, Washington, D.C., for appellees.

Before: MIKVA, Chief Judge, EDWARDS and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

Appellant, Telephone and Data Systems, Inc. (TDS), and its subsidiary, United States Cellular Corp., appeal a district court decision dismissing two counts of a complaint, one alleging tortious interference with a contractual relationship and the other tortious interference with a prospective business relationship, against American Cellular Network Corp., and Amcell of Atlantic City, (Amcell). The district court gave preclusive effect to an FCC decision that invalidated a paragraph of the contract that was the subject of the complaint and held that, without that paragraph of the contract, TDS could not maintain its claims for tortious interference.

We reverse the district court's decision and remand for further consideration of TDS's claims. The complaint set forth a claim for tortious interference with a prospective business relationship that was based, not on the invalid paragraph, but on TDS's allegations that it had a reasonable expectation of economic advantage growing out of its option to purchase an interest in the Atlantic City cellular telephone system. We remand, therefore, for further consideration of the claims that did not depend on the existence of the invalidated paragraph.

## I. BACKGROUND

In 1986, Ellis Thompson entered an FCC lottery to obtain a license to construct and operate the "non-wireline" cellular telephone system in Atlantic City, New Jersey. Prior to the lottery, Mr. Thompson and over 100 other applicants pooled their lottery chances by entering into an agreement (the "CMS agreement"). The CMS agreement provided that the winner of the lottery would receive a 50.01% interest in the license while the remaining 49.99% would be divided up between the other applicants. The agreement also contained a clause that prohibited "selling control of the license" without a two thirds vote.

Ellis Thompson won the lottery and received his 50.01% share. He then entered into a contract with TDS under which TDS agreed, among other things, to finance the construction of the cellular network. With this financing in place, Mr. Thompson could proceed with the application process necessary to obtain an FCC permit to build the cellular system. The agreement between

TDS and Mr. Thompson also gave TDS the option to purchase Mr. Thompson's license after the cellular network was completed (at the time, FCC rules prohibited the sale of a license before the holder received a construction permit and actually built the system). Later, the agreement was amended to add a clause ("paragraph 16") prohibiting Mr. Thompson from entering into any agreement relating to the provision of goods or services costing more than $50,000 without prior consent from TDS. Paragraph 16 also required Mr. Thompson to include in any such agreement, a clause giving TDS the right to cancel the contract within 60 days after it exercised its option to buy Mr. Thompson's license.

Realizing that the CMS agreement between Mr. Thompson and the other lottery participants required a two thirds vote to transfer control of the license, TDS began its attempt to purchase enough minority shares in the pool to obtain the required two thirds vote. Amcell, a competitor of TDS, also realized that Mr. Thompson could not sell control to TDS without the two thirds majority so it too began to buy up minority shares in the CMS agreement, apparently in an attempt to block the sale of the cellular system to TDS. In its complaint, TDS alleges that Amcell acquired many of these minority interests through fraud and misrepresentation. TDS claims that Amcell misrepresented to sellers the value of Amcell stock, which the sellers received in exchange for their minority interests. TDS also claims that an agent of Amcell, The Cellular Corporation (TCC), violated an FTC consent decree by threatening minority interest holders with the prospect of having to pay "back end fees" if they sold their interests to TDS instead of Amcell.

By October of 1987, Amcell had acquired enough minority interests to block a transfer of control from Mr. Thompson to TDS and, TDS alleges, Amcell notified TDS of this fact by letter. A month later, Mr. Thompson told TDS that he intended to enter into an agreement with Amcell under which Amcell agreed to construct and maintain the Atlantic City cellular system as well as provide switching and other services. TDS objected, pointing to paragraph 16 of its agreement with Mr. Thompson which prohibited such a contract without consent from TDS. TDS also objected because the Amcell/Thompson contract did not contain the requisite cancellation clause. Despite TDS's objections, Mr. Thompson and Amcell entered into the agreement without TDS's consent and without including the cancellation clause required by paragraph 16.

Shortly after signing the agreement, Amcell petitioned the FCC for a conditional grant of Mr. Thompson's application for the Atlantic City license. Claiming that paragraph 16 of the TDS/Thompson agreement violated FCC rules and policies by allowing TDS to interfere with Mr. Thompson's control of the license, Amcell asked for the grant to be conditioned on the abrogation of paragraph 16 from the TDS/Thompson agreement. The Mobile Services Division of the Common Carrier Bureau agreed with Amcell, explaining that "we believe that paragraph 16 of Thompson's agreement with TDS does allow TDS to interfere unreasonably with the tentative selectee's business decisions." Accordingly, the Bureau granted Mr. Thompson's application "conditioned on removal of paragraph 16 from the TDS/Thompson Option Agreement." Memorandum Opinion and Order, 3 FCC Rcd. 3692, at 3 (Com.Car.Bur.1988).

The Bureau denied TDS's petition for reconsideration of its order conditioning the approval of Mr. Thompson's application on the removal of paragraph 16 from the TDS/Thompson agreement. The Bureau held that the Commission's rules and policies, embodied in its *Cellular Control Notice*, 1 FCC Rcd 3 (1986), required that a licensee have control, at all times, over its operations. *See* Memorandum Opinion and Order, 4 FCC Rcd. 1599, 2601 (Com.Car. Bur.1989). The Bureau then found that "the clauses in paragraph 16 of the TDS/Thompson agreement in question here are precisely the type of provisions which the Commission had in mind when it issued the guidelines in the *Cellular Control Notice.*" *Id.*

While the FCC proceedings were pending, TDS filed a complaint in the United States District Court for the District of Columbia. Originally the complaint alleged only two causes of action: a claim for tortious interference with contractual relations and a claim for tortious interference with prospective business relations. Later TDS amended its complaint by adding five more counts, one of which alleged violations under the Lanham Act, 15 U.S.C. § 1125, et seq.

The district court then dismissed the two tortious interference claims, holding that the FCC's decision conditioning the approval of Mr. Thompson's license on the removal of paragraph 16 from the TDS/Thompson agreement "nullified paragraph 16 ... the sole source of any rights TDS might have had regarding the Atlantic City cellular telephone system." *Telephone and Data Systems, Inc. v. American Cellular Network Corp.*, No. 88–0264, at 4 (Sept. 6, 1988) (hereinafter *Memorandum Opinion*). The court concluded that, because the FCC's order was entitled to res judicata effect, TDS could not maintain the two tortious interference claims. *Id.*

Apparently, in an effort to obtain immediate review of the district court's decision, TDS voluntarily dismissed the remaining five counts of its complaint by stipulation under Rule 41(a)(1) and this appeal followed. TDS claims that the District Court erred in giving res judicata effect to the FCC's decision regarding paragraph 16 of the TDS/Thompson agreement. Furthermore, TDS argues that even if the FCC's determination was entitled to res judicata effect, paragraph 16 was not the "sole source" of TDS's rights and, therefore, the court erred in dismissing the two tortious interference counts. TDS also claims that the court below erred in denying TDS's motions seeking a clarification of the court's order dismissing the two tortious interference claims.

## II. Analysis

### A. *Jurisdiction*

■ A potential problem with jurisdiction warrants a brief discussion. TDS presumably dismissed its federal claims, without prejudice, in order to obtain immediate review of the district court's decision dismissing the two tortious interference claims. By doing so, however, TDS could remain in court only by relying on either diversity jurisdiction or the court's continued exercise of pendent jurisdiction. It is possible that diversity jurisdiction does not exist in this case. While TDS has satisfied the requirements for diversity jurisdiction set out in 28 U.S.C. § 1332, the District of Columbia has a "door closing" statute under which a foreign corporation doing business in the District may not bring an action in any court in the District unless it has obtained a certificate of authority to do business in the District. *See* D.C. Code Ann. § 29–399.20 (1991). A federal court, sitting in diversity in the District, must apply the District's door closing statute. *See ILC Corp. v. Latino Newspaper, Inc.*, 747 F.Supp. 85, 87 (D.D.C.1990) (citing *Woods v. Interstate Realty Co.*, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949)).

At oral argument, the court asked counsel for TDS whether the company had a certificate of authority to do business in the District and counsel responded that TDS did possess one. But after oral argument it became clear that TDS did not hold a certificate of authority. Appellant has now obtained a certificate, effective January 10, 1992. It remains unclear, however, whether TDS was, in fact, doing business in the District before that date. If TDS was doing business in the District without a certificate, then the failure to comply with the District's door closing statute would have prevented the exercise of diversity jurisdiction when TDS voluntarily dismissed its federal claims. *See FW/PBS Inc. v. City of Dallas*, 493 U.S. 215, 110 S.Ct. 596, 607–08, 107 L.Ed.2d 603 (1990) (appellate court can notice jurisdictional defect even though not raised in court below) And, in that case, this court might prevent TDS's end run around the final judgment rule by refusing to exercise pendent jurisdiction over the remaining nonfederal claims. *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614,

619 n. 7, 98 L.Ed.2d 720 (1988) (when all federal claims are dismissed before trial, "the balance of factors to be considered under the pendent jurisdiction doctrine ... will point toward declining to exercise jurisdiction over the remaining state-law claims"). But because it is unclear whether TDS did business in the District, and because Amcell did not raise the issue, we simply note the jurisdictional problem that the voluntary dismissal of the federal claims may have caused. The district court should evaluate any jurisdictional problems on remand.

### B. *The Tortious Interference Claims*

■ The district court dismissed TDS's claims for tortious interference with a contractual relationship and tortious interference with a prospective business relationship because, in the court's view, the FCC's decision conditioning the approval of Mr. Thompson's license on the removal of paragraph 16 from the TDS/Thompson agreement "nullified paragraph 16 ... the sole source of any rights TDS might have had regarding the Atlantic City cellular telephone system." *Memorandum Opinion*, at 4. The district court overlooked, however, TDS's tortious interference claims that did not rely on the ill-fated paragraph 16.

TDS's first amended complaint alleged more than an interference with its rights under paragraph 16 of the agreement. Count II of the complaint alleged an intentional interference with a prospective business relationship. This count was based on TDS's allegations that it had a reasonable expectation of economic advantage growing out of its option to purchase Mr. Thompson's interest in the Atlantic City cellular system. TDS claimed that Amcell interfered with this interest by making fraudulent misrepresentations to minority interest holders in an effort to block TDS's

ability to exercise its contractual option to purchase Mr. Thompson's cellular license once the system was completed. These allegations do not depend on the existence of paragraph 16 of the TDS/Thompson agreement.

The District Court never recognized TDS's separate claim for intentional interference with a prospective business relationship. The court below merely held that "plaintiffs claims for tortious interference with a *contract*" could not survive the abrogation of paragraph 16. *See* Memorandum Opinion and Order, at 4 n. 2 (emphasis added). Because the district court failed to address the allegations that did not rely on the validity of paragraph 16, we remand so that the court can properly consider those claims.

### III. CONCLUSION

We reverse the district court's decision and remand for further consideration of TDS's claims. The complaint set forth a claim for tortious interference with a prospective business relationship that was not based on the invalid paragraph 16. We remand, therefore, for consideration of TDS's claims that did not depend on the existence of the invalidated paragraph. The district court should also assess, on remand, any jurisdictional problems created by TDS's decision to dismiss its federal claims in order to obtain review of the court's decision. We have considered TDS's other arguments and find them to be without merit.

So ordered.